```
              UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF OHIO
                    WESTERN DIVISION
```

UNITED STATES OF AMERICA,      :     NO. 1:03-CV-00740
                               :
    Plaintiff,                 :
                               :
  v.                           :     **ORDER**
                               :
                               :
ONE 1996 VECTOR M12,           :
    et al.,                    :
                               :
    Defendants.                :

This matter is before the Court on Plaintiff's Motion for Summary Judgment (doc. 20), Claimant's Response to Plaintiff's Motion for Summary Judgment (doc. 21), and the Affidavit of Kent Rogers in Support of the United States' Motion for Summary Judgment (doc. 24).

**I.  BACKGROUND**

The United States filed this case on October 28, 2003, seeking the forfeiture in rem of eleven pieces of property, including two Vector automobiles ("Vectors"), which Plaintiff alleged should be forfeited pursuant to 18 U.S.C. § 981(a)(1)(A) and /or 18 U.S.C. § 981(a)(1)(c), for having been purchased from the proceeds traceable to wire fraud (doc. 1).  Shortly thereafter, the government seized all such property pursuant to a warrant of arrest in rem (docs. 4 & 5).  On January 16, 2004, David A. Sawyer ("Sawyer"), and his corporation, American Aeromotive Corporation

("AAC"),[1] filed a claim of ownership to the Vectors, requesting the release of the automobiles to his possession (doc. 7). Pursuant to a settlement agreement on January 27, 2005, the United States relinquished its claims to all the vehicles but the Vectors (doc. 16). On March 8, 2005, the government brought the present motion for summary judgment as to the Vectors (doc. 20).

According to the government, Kent Rogers ("Rogers"), a Special Agent of the Internal Revenue Service Criminal Investigation Division, conducted an investigation into John Patrick Kisor ("Kisor"); Kisor's corporation, PDK International LLC ("PDK"), a United States Virgin Islands Corporation; Sawyer, who previously served as Kisor's personal assistant; and AAC (doc. 20). Rogers's investigation revealed that Kisor was involved in investment fraud against at least 130 Cincinnati area investors since at least 1999, who invested approximately $35 million and sustained losses of between $7.7 and $19.7 million (Id.). Kisor presented to these investors false tax returns for PDK, false brokerage statements, and false periodic statements of investment performance (Id.). Some of the PDK investors' funds were lost as a result of the investments Kisor made (Id.). Additionally, Kisor diverted some of the PDK investors' funds for his own personal use and for use by others (Id.).

---

[1] AAC is a Florida corporation formed on May 23, 2001, with Sawyer as its sole incorporator, President, Secretary, Treasurer, and Director (doc. 20).

Among the items that Kisor purchased using these private investment funds were the two Vectors that are the subject of the present motion,

> One 1996 Vector M12, VIN 1V9MB1220T1048001, registered to American Aeromotive Corporation, 7335 Park Avenue, Cincinnati, Ohio 45231 ("Defendant 1"), and
>
> One 1999 Vector M12, VIN 1V9MB1228X1048012, registered to American Aeromotive Corporation, 7335 Park Avenue, Cincinnati, Ohio 45231 ("Defendant 2")

(Id.). As evidenced by two purchase orders that Kisor signed, PDK purchased the Vectors on April 25, 2001, from The New Auto Toy Store ("New Auto Toy Store") in Ft. Lauderdale, Florida (Id.). PDK paid a total of $310,000 for the Vectors, and these funds came exclusively from Kisor's accounts (Id.). New Auto Toy Store subsequently provided an Affidavit of Correction to the State of Florida stating that the correct purchaser's name for Defendant 2 was AAC, as well as a Motor Vehicle Dealer Title Reassignment Supplement for Defendant 1 showing the buyer's name as AAC (Id.).

On March 16, 2005, Kisor entered a plea of guilty to violations of wire fraud, securities fraud, and engaging in monetary transactions in property derived from unlawful activity, in contravention of 18 U.S.C. § 1343, 15 U.S.C. §§ 77(q), 77(x), and 18 U.S.C. § 1957 (respectively) (doc. 24). In accordance with 18 U.S.C. § 981(a)(1)(c), 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(a)(1), this plea agreement required Kisor to forfeit to the

3

United States all property that derived from proceeds traceable to the above offenses, as well as all property involved in or traceable to such offenses (doc. 24). Among other things, Kisor agreed to forfeit the Vectors, as the Vectors were "proceeds of illegal conduct and/or property involved in illegal conduct giving rise to forfeiture and/or as substitute assets" (Id.). Further, the plea agreement states:

> [Kisor] states that he purchased [the Vectors] from The New Toy Auto Store solely with $310,000 of funds invested by investors in Agave Ltd. and PDK, that he caused title to [the Vectors] to be transferred by The New Toy Auto Store to American Aeromotive Corporation, that neither American Aeromotive Corporation or David Sawyer gave anything of value for [the Vectors].

(Id.).

The government's Motion for Summary Judgment argues first that Sawyer lacks standing to contest forfeiture of the Vectors, because he did not strictly comply with the requirement of Rule C(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims by filing and serving an Answer upon the government (doc. 20). Plaintiff next argues that even if Claimant has standing, summary judgment should be granted because there is no dispute of material fact as to whether the Vectors are subject to forfeiture, and Sawyer cannot prove he is an innocent owner who was a bona fide purchaser for value (Id.).

On March 28, 2005, Claimant Sawyer filed his response to

Plaintiff's Motion for Summary Judgment, arguing that all required pleadings were timely filed in this matter, and that Claimant has standing (doc. 21).  Claimant argues that twenty-five percent of AAC stock was given in consideration for the Vectors, and that AAC owns the Vector names and marks, worth at least $50,000.00 (Id.). Claimant argues that in order to qualify as a bona fide purchaser for value, he need only establish that he gave a value in consideration for the exchange, and not necessarily an equivalent value (Id.).

**II. SUMMARY JUDGMENT STANDARD**

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir.1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir.1992)(per curiam).  In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8

5

F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)(internal quotation marks omitted).

   The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled.  First, "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact[.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).  The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case.  See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

   Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact.  See Celotex, 477 U.S. 317; Anderson v.

6

Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-40 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir.1989)(internal quotation marks omitted). In contrast, mere

7

conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F .2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See Matsushita, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-55 (6th Cir. 1991).

**III. ANALYSIS**

The government argues that Claimant failed to strictly comply with the Supplemental Rule of Civil Procedure C(6), which applies when the United States files a complaint for civil forfeiture. Rule C(6)(a)(iii) requires Claimant to file, in addition to a verified statement, an answer. Because Claimant did not file an answer, the government argues he failed to comply with

8

Rule C(6), and thus has no statutory standing to assert his claim. Indeed, courts have often strictly enforced the rules governing claims to property subject to a forfeiture action. However, the purpose of an answer is to set forth in detail the claims and defenses which the claimant believes support his assertion of claim to the property. United States v. $4,629.00, 359 F. Supp. 2d. 504, 507 (W.D. Va., 2005). The Court finds that in this instance, Claimant's statement, combined with his response in opposition to Plaintiff's Motion for Summary Judgment, adequately meet the requirements of both a claim and an answer. Accordingly the Court will construe such filings to comprise both a timely filed answer and a verified statement. Id.

The question therefore before the Court is whether Claimant has raised a genuine issue of material fact as to his claim of a valid interest in the Vectors. Claimant raises no genuine dispute of material fact as to whether the Vectors are subject to forfeiture, conceding that they may have been obtained by Kisor with ill gotten gains. Based on the plea agreement that Kisor entered into on March 16, 2005, there is no serious question as to whether the Vectors were purchased with funds having a substantial connection to fraud.[2] Accordingly, the Claimant bases

---

[2]The Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), which applies to all forfeiture proceedings on or after August 23, 2000, places upon the government the burden of establishing, by a preponderance of the evidence, that the defendant property is subject to forfeiture. Pub. L. No. 106-185, 114 Stat. 202

9

his entire argument on the proposition that he innocently purchased the Vectors, having given 25 percent of the stock of AAC in exchange for them.[3]

When contesting a forfeiture under CAFRA, "[t]he claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the evidence." 18 U.S.C. § 983(d)(1). The "innocent owner" of "a property interest acquired after the conduct giving rise to the forfeiture has taken place" includes a person who "(i) was a bona fide purchaser . . . for value . . . and (ii) did not know and was reasonably without cause to believe that the property was subject to forfeiture." 18 U.S.C. § 983(d)(3)(A). CAFRA lacks a definition of "bona fide purchaser for value." Courts have turned to the definition for "bona fide purchaser for value" under the Continuing Criminal Enterprise Act, 21 U.S.C. § 853(n)(6)(B), which includes "all persons who give

---

(2000). For Plaintiff to meet the burden of establishing that the Vectors are subject to forfeiture, it must demonstrate that there is a "substantial connection" between a criminal offense and the Vectors. 18 U.S.C. § 983(c)(3). The Sixth Circuit has defined "substantial connection" as "a reasonable ground for belief, supported by more than mere suspicion, that there is a substantial connections between the seized [property] and an illegal . . . transaction." United States v. 16510 Ashton, 47 F.3d 1465, 1469 (6th Cir. 1995) (quoting United States v. $67,220.00 in United States Currency, 957 F.2d 280, 298 (6th Cir. 1992)).

[3]CAFRA also commands that "[a]n innocent owner's interest in property shall not be forfeited under any civil forfeiture statute." 18 U.S.C. § 983(d)(1).

value . . . in an arms'-length transaction with the expectation that they would receive equivalent value in return." See United States v. 198 Training Field Rd., 2004 U.S. Dist. LEXIS 10743, at *6 (D. Mass.) (quoting United States v. Reckmeyer, 836 F.2d 200, 208 (4th Cir. 1987)).

Plaintiff argues that Claimant's transfer of twenty-five shares of AAC stock to Kisor in exchange for the Vectors does not constitute a bona fide purchase for value because any method of comparing the value of the Vectors and the value of the AAC stock would lead the Court to conclude that the exchange was not one characterized by "equivalent value" (Id.). Plaintiff contends that on May 23, 2001, AAC authorized the issue in its Articles of Incorporation of 100 shares with a par value of $1.00 per share (Id.). Twenty-five of those shares were exchanged for the Vectors (Id.). Plaintiff then analyzes price per share with three comparisons: the amount that Kisor paid for the Vectors on April 25, 2001, $310,000.00, (which, in exchange for twenty-five shares would mean each share equated $12,400.00); the amount of the total purchase value of the Vectors as listed on the August 30, 2002, Ohio Certificates of Title, $12,000.00, (which would mean each share would equate $480.00); and the total appraised value of the Vectors, $173,000.00, (which would mean each share would equate $6,920.00) (Id.). Plaintiff argues that under any three of these comparisons, clearly Claimant is a gratuitous transferee who gave

11

little or no value for the Vectors (Id.).

In contrast, Claimant argues that he is a bona fide purchaser for value under CAFRA because the twenty-five shares of stock in AAC he exchanged with Kisor for the Vectors had value backed by assets (doc. 21). Among AAC's assets is the copyright to the Vector name and marks, which Sawyer purchased for $50,000 on May 23, 2001 from Vector Holding Company (Id.). Claimant asserts that, absent any debts, AAC is worth at least $50,000 (which would be equivalent to $500 per share of AAC stock) (Id.). Next, Claimant maintains that AAC stock has potential to appreciate in value due to prospective marketing agreements with toy and model manufacturers, calendar publishers, and video game developers(Id.).

In response to Plaintiff's contention that the value of the stock transferred from AAC to Kisor cars does not adequately reflect the value of the cars, Claimant asserts that such a comparison is misplaced (Id.). Specifically, Claimant contends that, in order to be a bona fide purchaser, he must have given valuable consideration, but not necessarily consideration of equivalent or equal value (Id.). Thus, Claimant insists that the relevant issue is not the value, nature, or quality of the stock transfer from AAC to Kisor, but rather that such stock transfer has value (Id.). Noticeably absent from Claimant's Response, however, is citation to authority supporting the proposition that *any* consideration, regardless of the value, nature, or quality of such

12

consideration, will give rise to a bona fide purchase for value.

Having reviewed this matter, the Court finds well taken Plaintiff's assertion that the transfer of twenty-five shares of AAC stock for the Vectors did not give rise to a bona fide purchase for value. The exchange was not one of equivalent value. 198 Training Field Rd., No. 02-11498-GAO, 2004 U.S. Dist. LEXIS 10743, *6, (D. Mass, June 14, 2004). Indeed, the exchange between Kisor and Claimant was anything but equivalent. Twenty-five shares of AAC stock, with a par value of only $1.00 per share, were exchanged for the Vectors. While the true value of the Vectors is uncertain, the various valuation models--the purchase price ($310,000.00), the value as listed on the title certificates ($12,000.00), and the appraised value ($173,000.00)--all show the Vectors are worth much more than the par value of twenty-five shares of AAC stock. The Court does not find persuasive Claimant's argument that AAC is worth at least $50,000.00, as the value of its copyright asset is not offset by any debts that the corporation owes. Finally, the likelihood that the value of the stock will increase with future marketing arrangements is speculative, at best. Indeed, the value of AAC's assets, at present or in the future, cannot be directly linked to the value of the AAC stock that was transferred to Kisor in exchange for the Vectors. Claimant is unable to prove he tendered equivalent "value" for the Vectors, and he has not adequately contested Kisor's statement in the plea agreement that

13

"neither American Aeromotive Corporation or David Sawyer gave anything of value for [the Vectors]" (doc. 24).

**IV. CONCLUSION**

The Court finds Plaintiff's Motion for Summary Judgment well-taken to the extent that it finds the Vectors were acquired with funds derived from Kisor's criminal offenses and are subject to civil forfeiture.  The Court further does not find well taken Claimant's argument that he is an innocent owner under CAFRA because he is a bona fide purchaser of the automobiles.  Claimant's exchange of twenty-five shares of AAC stock does not constitute an equivalent exchange for the value of the Vectors.

Accordingly, the Court GRANTS the United States' Motion for Summary Judgment (doc. 20), FINDS that Defendant vehicles, one 1996 Vector M12, VIN 1V9MB1220T1048001, registered to American Aeromotive Corporation, 7335 Park Avenue, Cincinnati, Ohio 45231, and one 1999 Vector M12, VIN 1V9MB1228X1048012, registered to American Aeromotive Corporation, 7335 Park Avenue, Cincinnati, Ohio 45231, are forfeited pursuant to  18 U.S.C. § 981(a)(1)(A) and 18 U.S.C. § 981(a)(1)(c), for having been purchased from the proceeds traceable to wire fraud, and DISMISSES this case from the Court's docket.

SO ORDERED.

Dated: December 1, 2005        s/S. Arthur Spiegel
                               S. Arthur Spiegel
                               United States Senior District Judge